Counsel, you may proceed. May it please the Court, I am Eric Danoff. I am the attorney for the defendants, Seamaster and Summit. As the Court knows, there are five separate issues here, three raised by Seamaster and Summit, two raised by MOL, Mitsui O.S.K. Lines, and unless the Court wants me to start on a particular one, I'm going to start with detrimental reliance. Very well. The question here is the difference between justifiable reliance and reliance. And on this issue, and it's a keystone issue because if this is decided in favor of the defendants, the other issues all go away. On this, we rely on the district court's findings of fact. The district court found that MOL had reason to investigate Rainbow, which is the fake trucking company, much earlier than it did, that this arrangement had been going on for eight years and thousands of shipments before the first shipment Seamaster or Summit made. And because it had a reason to investigate, according to the district court, the courts would say it's on inquiry notice, that there's something suspicious. And there are several other findings of fact supporting that. There was a loss on the Shenzhen Door trucking. That's not normal. Normally you charge more for the trucking than you pay. The trucking rates they paid Rainbow were higher than the norm. That was a red flag. The Shenzhen Door movements were not normal at all, another red flag. And MOL did investigate other trucking companies and other vendors. Kennedy. Aren't those findings, though, which are at page 31 of the findings of fact and conclusions of law, aren't those essentially findings that gratuitous may be the wrong word, but aren't those findings that essentially did not form the basis for any conclusion and, indeed, don't those findings fall woefully short of constituting justifiable reliance because those findings would have to be deemed preposterous or patently and obviously false? So it seems to me those findings fall well short of the standard justifiable reliance under California law. Well, my position is there was no justifiable reliance, that what the judge did was make these findings to say that MOL did have all these red flags and was on inquiry notice and also found if they'd done a reasonable investigation, this is what the district court found, they would have discovered this was fake, but the judge applied the wrong legal standard and then found there was no duty of MOL to make an investigation. So doesn't California law look at whether the entity was relying on someone in a confidential relationship so that Mr. Yip, I guess, who was MOL's agent, was the one who was arranging this fraud? That seemed to be one of the characteristics that the district court was relying on. But the California law is that an element of misrepresentation is justifiable reliance, and what that means under California law, it's a sliding scale. Not everybody has the same duty. An older, uneducated person, unsophisticated, has a very low duty to make an investigation. But under California law, a company like MOL, which is large and sophisticated and has resources and time to make an investigation, they have a higher duty to investigate to fulfill the element of justifiable reliance to recover. When they have an agent who they're relying on, their own employee who's in charge, and I think the district court also made findings about the effort at cover-up, why doesn't that put us into, as Judge Stilberg said, the patent and obviously false category, that part of the scale? It isn't what Mr. Yip did or didn't do that's relevant to the justifiable reliance. It's what the rest of the company did. The auditors, their accounting staff, their legal department. That's what, when the judge said MOL had a reason to investigate, and if they had investigated, they would have found out about this, he wasn't referring to Mr. Yip. He was referring to the company as a whole. Didn't the Court say that anybody who didn't report this to MOL was part of the conspiracy or words to that effect? Yes, but that's a different issue. That's the agency issue. That's the issue there was did what Mr. Yip knows as an agent of MOL attributable to him, and the judge found there was an adverse interest exception, so it isn't attributable, and that applied whether he and one other person knew or a hundred people knew. That's a different issue. That's whether they are bound by what Yip knew as agency. This issue that I'm talking about is an element of the tort of misrepresentation, which is the company as a whole, not Yip, has to justify, rely on this representation, and the district court's finding of fact showed that it did not, and inexplicably the district court. But it didn't rely on Mr. Yip, or are you saying that that's not, that's not important? I'm sorry, I don't understand the question. I guess I understand your argument about a sophisticated party has a higher duty, but the California law seems to say when they're relying on their agent, that duty goes away, and the rule is the patently and obviously false rule. And so I'm just trying to understand why that rule doesn't apply here. Because that's, that is conflating the agency question and the detriment, the just vulnerable reliance question. I'm not saying that it was Yip who should have done the investigation. I'm saying the company as a whole, and I'm not, the district court didn't say Yip didn't do the investigation. He said, Mitsui, as a whole, the company has, and there was plenty of evidence about this, auditors, legal department, accountants, they have a lot of people who should have noticed this and could have noticed this. What is the this? Which is the, which red flag are we, are you relying on? There's several of them. That the, over an 8-year period, MOL was having Shenzhen door shipments, which are not normal, paying more for the trucking that wasn't happening than they were receiving from the customer when they normally get at least as much or more from the customer on these door shipments. How much of that did they know? Well, it was obvious on their accounting. Anybody who looked at the accounting records would see it. That's why the judge said it was a red flag. Anybody who looked at it would have noticed that. But what about the intention? I guess I keep coming back to this intentionally misleading, that the parties were all intentionally misleading Mitsui. And that kicks us into a different part of the sliding scale for the duty to investigate. No. The sliding scale is not, is based on the sophistication of the party to whom. Well, then let's get away from the sliding scale. The rule seems to be that when there's intentional misleading by someone who's in a relationship, that it has to be patently and obviously false. I guess I'm not understanding, then, what your argument is. Well, the judge essentially made the statement that this was sort of patently false if anyone had looked. It's not that they actually, the justifiable reliance doesn't require that they actually knew. We're not contending that they did the investigation and knew about it. We're saying what the judge found was that if they had looked, and they had a reason to look, and if they had looked, they would have known. Well, the question is the duty under California law, though, right, and whether they had a duty. And it seemed like they have no duty unless it's obvious on its face. That's how I understood the standard. I don't think the court, the district court didn't apply that patently and obviously false standard, but that seems to be the California case law. No, I don't think that's an accurate statement of the California law. The California law is there is a duty to inquire. There is a duty to inquire, and that duty varies depending upon the facts of the case and the sophistication of the person to whom the representation is made. What the district court said is there is no duty. We don't, that there is no duty to investigate. Therefore, even though I find that if they had investigated, they would have discovered this, and even though they had reason to investigate, I'm not going to find, I'm going to find that they satisfied reliance. And what he basically found was reliance, but not justifiable reliance. It's the difference between reliance and justifiable reliance that was the mistake. All right. Well, the Linden case does say unequivocally that, as he quoted, that one to whom a representation is made has no duty to employ means of knowledge which are open to that party and which could have pursued, revealed the falsity of the representation. Now, admittedly, the court then goes on to say you got to be careful what cases you apply this to, but it's a pretty unequivocal statement by the California court. Well, no. That was a statement by the district judge quoting from a case in California. That is not an accurate statement of California law. And we put forth any number of cases in our brief stating that is not the California law. The California law is there is a duty to investigate depending upon the facts of the case and the sophistication. What's your best California case on that point? You'll bear with me one second, Your Honor.  Well, there's a series of cases cited on pages 27 and 28 of the brief that are California cases, including the Alliance mortgage case v. Rothwell and Ralph Andrews' products v. Paramount Pictures. The Ninth Circuit summarized in California law in the Atari Corporation case and the Seeger case also agreed there is a duty of inquiry based on the sophistication of the buyer, of the person, rather the person who receives the misrepresentation. In the case of the Seeger case, there is a duty of inquiry based on the sophistication of the buyer, of the person, rather the person who receives the misrepresentation. Incidentally, at page 59, the trial judge found that the arrangement was clearly designed to avoid detection by MOL. It was designed that way, but it was the judge also found that despite that intended design, it was obvious to somebody who looked. As the judge said, the judge's words, any reasonable investigation would have discovered this was phony. There was no rainbow trucking of any substance. It was obvious. And back to my earlier question, where did those findings become a conclusion in his order? He didn't come out and say, I find, well, he did say, I find that MOL relied on the representations. He didn't really, what he said was, there was a, there was, there were red flags that would have put MOL on notice, and a reasonable investigation would have revealed the fake trucking. But despite that, I find MOL did not have a duty to do an investigation. Therefore, I find the element of reliance has been fulfilled. That's what he said in his decision. May I turn to another issue? Absolutely. And actually, now that I'm into it, if there's one issue, again, there's so many issues, I'm not going to have time to cover them all. If there's one the Court really wants to hear about, I'll go to it. Otherwise, I just want to say something about the overpayment issue. And to understand the overpayment issue, you have to briefly understand what this arrangement was. And basically it was, there was no trucking actually done from the factory to the port in Hong Kong or in Shenzhen. However, MOL charged Seamaster and Summit an amount for that trucking. It was $170 in Seamaster's case. MOL turned around and paid Rainbow $247 for that same trucking. Again, a red flag because it was more than they got. Rainbow then reimbursed Seamaster the $170. So Seamaster came out even. There was a $77 loss to MOL. The Court awarded MOL the full $247, not their actual $77 loss. In this kind of a tort, what we should be calculating is compensatory damages. The judge didn't really give clear reasons why he didn't do that. He cited a case of equitable set-off, and he called this an equitable set-off. This isn't an equitable set-off, so I'm not going to give the credit for the amount that Seamaster and Summit actually had paid to MOL. Well, first of all, this is not an equitable set-off. What we're dealing here is computing compensatory damages. What MOL argued in their brief on appeal was not equitable set-off, but that this was roughly equivalent to space protection damages that the judge did not award. But the judge didn't award space protection damages, either in a specific amount or in broad strokes. The judge didn't award space protection damages. Sotomayor, did you present evidence of these specific elements of damages? So in other words, you're saying that the damages calculation was erroneous because the elements would have been included, the loss of origin receiving charge and the loss of space protection fee. At least an argument opposing counsel makes is it would be too hard to figure out what that is. So did you present the district court with evidence of what that was? Well, it was MOL's burden to present their damages, their plaintiffs, for the space protection they gave. They put on no evidence of that. They didn't put on the cost of space protection. They didn't put on evidence of how many were space protected. So any finding, and we're talking about a million and a half dollars of overpayments that we were not credited. Was there an argument on feasibility of presenting these elements of damages? That never came up at the trial because those damages were never, the space protection damages were never presented. There was never, and there were witnesses who could have been presented to give that amount. Somebody certainly could have been presented from MOL, this is what we charge for space protection. These are the shipments we space protected, even if not exactly, in some quantity. None of that was presented. So to say that the million and a half dollars of hard dollars that were paid to MOL are somehow offset by some speculative amount of space protection is incorrect. That becomes punitive then. And the judge said, I'm not awarding punitive damages. But that's basically what this becomes. Finally, I'd like to turn to the other issue we raised, which was the attorney's fees issue. And this is just purely a question of statutory interpretation. And the clause that was argued to allow attorney's fees is in a bill of lading incorporated into a tariff incorporated into a service contract. And it says you're entitled to collect freight and charges, and we get attorney's fees for collecting amounts due. Collecting amounts due under other courts' interpretations, under the natural reading, does not refer to unliquidated tort claims. It refers to the amounts due under the contract, in this case, freight and charges. And the judge, again, applied he said there was an analogous case that had a much broader attorney's fees clause, and this is purely for the court to interpret, and I think the Court will agree with me that the district court's interpretation was wrong. I only have two minutes left. Unless the Court has questions, I'll reserve it. But if you have questions, I'd be glad to answer them. Which way does SILIGO point? The SILIGO case? S-I-L-I-G-O? I'm not sure which you're referring to. Well, it was a California case on this issue. That's fine. We'll take care of it. Thank you, counsel. May I reserve? Oh, you certainly may. Good morning, Your Honors. Eric Wise for Mitsui OSK Lines, and may it please the Court. Just briefly on the reliance issue, the California Supreme Court in the Seeger-Odell case, which was relied on by Atari, specifically states the fact that an investigation would have revealed the falsity of the misrepresentation will not alone bar recovery by the plaintiff. And what the district court did was follow that principle and stated that although he found that MOL potentially could have discovered this fraud, quote, this finding does not bar MOL's right to recovery altogether. Now, that is not a statement which the – what the appellants would have is that the California law would bar recovery simply by the fact that we were on inquiry notice. That's – the law is exactly the opposite, and it's pretty hard to twist that statement from Odell or from Atari or the statement from Linden regarding the duty with respect to reliance into a principle that we had a duty to investigate. But that's what they're asking this Court to do. Well, what about the argument that because MOL was so sophisticated and such a large corporation, their duty was heightened? Well, that's – Your Honor, they didn't – no. It's not the duty that's heightened. What that does is, including the cases cited, just cited by counsel here, what that does is it presents an issue of fact for the trier of fact to measure the damage of – to measure the circumstances of the case, because that's exactly what Linden said you should do, the trial court should do, which is to measure the circumstances of the case, not on the basis of a duty by the defrauded party, but on the basis of the whole circumstances of the case and to be careful. And that's exactly what the judge did. And it was a question of fact for him to decide. And what he decided was that because of this elaborate cover-up and this – the ongoing – this sophistication of the scheme, that the fact that we could have discovered or that MOL could have discovered this by inquiry, that that wasn't sufficient and that he determined as a matter of fact that the – that the reliance was justified. I think that what – that issue of fact was not clearly erroneous and it should be affirmed. And that would be reviewed on the clearly erroneous standard. If I may move on to damages. The Court found that the proper measure of damages was the, quote, equivalent to, unquote – and that's his word, not ours – to the amounts of the payments. What was that award for? It was for three elements of damages. Truck – the truck damage, that is, the payments made for the damage. Two, the space protection that was provided. And three, the terminal – Was there any finding with respect to what monetary value the space protection represented? No, but there was evidence on that, Your Honor. First, we start with Mr. – first, we have to decide what was space protection. What was – what cargo was space protected? The only evidence on that issue in the case is that from Jeff Tice, which was essentially that every container that was subject to the Shenzhen fraud was given space protection. He said, we needed to make sure – and this was in order to get space protection for the cargo so that they could service their major client, that is, Jones West and – or Nine West and Jones Apparel, and make sure that they could get that time-sensitive apparel and accessory cargo to New Jersey in a timely fashion. He said, we needed to make sure that we were never, never not given the necessary space on ships. Now, taking out the double negative, what that means is that they were always guaranteed that they would get the necessary space. So what was space protected? Every single container that was ever shipped by either of the defendants. Now, in terms of the value of that, that was a moving target, as the evidence showed. There were three separate elements or three separate pieces of evidence regarding what the value of that was. Number one, Mr. Rosenberg – and this is from the transcript of the trial at 1208 – at his deposition, which also appears in our supplemental excerpts, he stated that Mr. Wong told him $200 to $400 per container would allow them to get as many – 100 containers versus 10 containers on any particular ship. Mr. Sheehan, Dennis Sheehan, who testified – this was at RT-47 – testified that there was a program by which you could pay $1,000 and guarantee a spot for each container that you paid $1,000 for on a particular ship to be shipped on a particular day. And most importantly, there was testimony from Mr. Wong himself that when he went to Dave Prado in Hong Kong to discuss space protection, what Dave Prado offered him was a deal by which he would be given space protection for as many containers as he wanted for every container or 100 containers per ship or 10 – whatever he wanted in terms of space protection if he agreed to a dead freight plan. And what a dead freight plan was, okay, we'll reserve for you 15, 20, 30 containers on a ship, but you pay the freight, the full freight, for every one of those slots whether you get that container there or not. And that was at – that testimony was at Reporters Transcript 2015 – I'm sorry – that was – that was Jerry Wong's testimony, which is – appears in the record and is included in our supplemental excerpts. I don't have the page right now. So there were three – at least three examples of different types of payments or arrangements that can be made to be negotiated. But the point – and the court found clearly that you could get space protection, but you had to pay for it. They never paid for it. And so what happened – what they're trying to do now by saying that the – that they get back the money from these fake truck payments, what they're trying to say now is that, okay, we paid for two things. We paid for the fake trucking and we paid for the space protection, but we get that money back now. Now, they can either get a discount against – a set-off against the truck payments or they can pay for the space. But the point is that money goes – should go to one or the other, either for the truck payments or the – or the space protection. But it didn't – it shouldn't go for both, and we should get to keep that. And that's – and the judge unequivocally found that we were damaged by the space protection aspect of this. But the district court – I'm sorry. Go ahead. Has to make a reasonable calculation. It doesn't have to be exact. And the district court just said we'll give you all of this excess payments to – or we'll give you all of the payments to the trucking, rainbow trucking, and didn't, at least in the document, in its opinion, didn't attempt to make a reasonable calculation of the other elements. Well, he – but he – but the court can make an approximation based upon the evidence. But there was nothing in it showing an approximation. I mean, have you added it up from – based on the evidence in the record? Could it tell us any error in not approximating it is harmless, or do we need to say back-to-back finding? Well, I don't think it's – I don't think it's harmless. I think the – conceptually is that he found that there was damage resulting from the – from the – Are you saying it's impossible – would it have been impossible for the district court to make an estimation of the damage based on space protection? I think – no. I think if you – if you parlay – basically, if you look at page 60 of his opinion, of his findings of fact, where he discusses what the damages are, he says specifically that we were damaged or that MOL was damaged by the fact that they gave away free space protection. So then the question is, how do you calculate what that is? And there is – there – the – what he found was that the value of that was the equivalent – and he used the word equivalent, not us – of that whole package of damages, because at that page 60, he refers to both the prior findings and the future findings and, I mean, the future – and the future conclusions, saying I'll get to that. And what he did was he – the whole package of damages he estimates at being the equivalent of the payments made for the truck – for the truck farm. And is there enough evidence for us to say that was a reasonable calculation? I think so, Your Honor, that I just covered, which is that every single – space protection is – So how much would that be? So how much is that then? Well, I – And the opposing counsel says, well, it would have been mitigated because other people would have paid or the like. I'm not sure that – there was no mitigation. There's no mitigation argument. The argument is that they paid – that they paid for it. And what the judge also said in terms of this, quote, overpayment, he – in paragraph 39 of the – I believe it's 39 of his findings, he states specifically regarding the trucking leg. And he restricts it to the trucking leg. That differential between what was paid to Rainbow and what was paid out of – through the kickback back to MOL was the loss incurred on the trucking leg. He then later talks about the three legs of damages, that is, space protection, the differential cost, and the trucking leg. And clearly there should have been more for that. And what he found was that it was the equivalent of that. And I think based upon the evidence in the case, which I've identified three separate ways to calculate the value of the amount, and the whole idea of space protection is it's a prospective benefit. In other words, it's not something that you retrospectively look back on and say, okay, now pay us for that. It's something that we give this – what they had was they had space protection in a prospective way for every single container that went on that ship. Whether they used it or not is a different issue. But they were given that space protection prospectively. And if they had come – and as shown by the testimony regarding Dave Prado's conversations with Mr. Wong, if they'd come to us, we would have given them that perspective, but it would have cost them. And how much it would have cost them? Well, what the judge did, and I think actually it was a limiting factor, he gave us only what we paid in the trucking fees without considering anything else. But the damage award equals the amount, the total amount of the payments over the course of this scheme, correct? Yes. And that's the number. And then you're saying, but we have these other damages here and there's evidence of other damages, and then the judge basically said instead of awarding punitive damages – and by the way, that's another justification for this figure, isn't it? Yes. Yes, Your Honor. But he didn't say I'm having trouble coming up with a reasonable estimate of these space protection damages. He didn't say that. He just basically lets this total amount cover all these other areas. But he's entitled to do that, Your Honor. And what he did was he chose a method of calculation which was a reasonable one. It was based upon how many containers were shipped and the payments that they were willing to make to cover up the fraud in order to get space protection. And that's another element of our argument, which is that what they're trying to do is get the benefit of their past conduct. This is a unique situation where they made the payments in order to get the space protection to cover up the whole fraud. And under those circumstances, under the – under Civil Code section 3517, what they're trying to do is take advantage of their own wrong. They sued us for cross – they cross-claimed against us. They argued for a set-off. And the judge said, no, I'm not going to give that to you because it would be inequitable. So I think all – putting all that together, I think the judge's finding of what the equivalent value of what we lost is supported by the record and was not clearly erroneous. You deem some portion of that to be punitive damages? We don't, Your Honor, but I think it was the point being that he said that he was not going to give punitive damages because he'd given this. And I think it further supports his calculation or his – that was the general determination he made as an equitable basis. And he did not specifically say punitive damages. He makes an ambiguous comment about when he's denying punitive damages, he says, I'm not going to give additional punitive damages. So I don't – I don't know that he specifically said it was the equivalent, but I think what he came up with was a fair and just resolution of the damages. Could these other components, such as space protection, been reasonably estimated from the evidence? No, Your Honor. Because – in part because the change – how the – what the deal was would have to be something that would be – you'd have to reconstruct what the market was at the particular time of the calculation, which you couldn't do. And you'd have to reconstruct – in other words, you'd have to – each one of these are different types of negotiations that are taken on, and you'd have to reconstruct the market, remembering that the – that this is a prospective benefit. In other words, it applies prospectively. Space protection applies prospectively to each container, and it's – and you set the price based upon what the market is on a particular day. So that award would be based on speculation and guesswork rather than evidence and would not be a justifiable damage award, would it? No, that's not true, because of his findings. Going back to his findings about the cover-up of the fraud and the great lengths that they went to to cover up the fraud, under those circumstances, the courts have recognized, and we've cited the cases, that it's completely justifiable for the court to then decide that the – to make – has more leeway in making that estimate, and I think that's what the judge did here. If I can move on to the conspiracy issue, under – because I think – I actually think our appeal presents issues that are only issues of law, not issues of fact, and that the judge simply, despite his comprehensive consideration of the case and findings of fact, the judge came up with a very good resolution of this whole case and a very full and honest opinion of the whole thing. But I think he got two things wrong, and they're both on issues of law. The first is on the issue of the conspiracy. The issue presented on – in that case – When you say conspiracy, you mean the RICO claim? No. I'm sorry. I can get to the RICO, but I think what I'm talking about is the – is the joint several liability issue with respect to conspiracy. And when they were joined in this effort. Okay. As the court recognized, the issue comes down – that issue comes down to a choice between DeVries and Kidron under California law. And he chose Kidron. Now, that was a mistake. It was an error of law, and the reason why is that Kidron does not address in the least what the consequences are of joining an ongoing conspiracy. DeVries is the case that discusses that ongoing conspiracy. In Kidron, there was no conspiracy. There was no – there was no – they didn't join a conspiracy, and so the court never reached the issue of what the consequences are of joining an ongoing conspiracy. Do you disagree that each of the shipments was a separate tort? That would be what the district court's ruling implies. That each tort was completed when the shipment was completed. Do you disagree with that? I don't disagree with that to the extent that they were past injuries. To the extent that a tort means you violate somebody's rights or you breach a duty and it causes injury to that party, they were completed in the sense that that injury had already occurred, yes. But then the district court says under California law, and quotes the law, the conspiracy only says who's liable for that completed tort, and you can't be in a – once the tort's completed, that conspiracy is over. Well, that's what the court of appeals said in Kidron. The Supreme Court of California says just the opposite in DeVries. The Supreme Court in DeVries says specifically that a late-joining tort fees is responsible for all the injuries that were – But it doesn't talk in terms of completed torts, though. No, but what is an injury or a past act but a prior tort? That's what that is. And what Kidron does not face up to is – I mean, what the court – unfortunately, what the court did not do was consider whether Kidron even addresses the issue of what the liability of an ongoing court conspirator. Can I ask you about RICO before you run out of time? Yes. I wanted to get to – Was there evidence presented to the district court that Summit or Seamaster engaged in a pattern of male wire fraud in the United States? There was extensive evidence that – That caused harm? Yes. And can you tell me, what was the evidence about the fraudulent activity in the United States? Well, there are a number of elements to that, but the two principal ones were male and wire fraud, of sending mail and wire to the U.S. But what were the people in the United States had to be part of the scheme? So what was the evidence that they intentionally were involved in this fraudulent scheme in the United States? Well, Jeff Tice was definitely – and he definitely was involved in the scheme and would – and regularly negotiated with – with Costa. It's in the evidence. Costa and Tice regularly negotiated the price of the arbitrage. And where are they based? They're both in New Jersey. And then the predicate acts, which made the pattern of activity, which Chau and European communities say we should rely on, Chau specifically says that the enterprise model is out the window and the nerve center test is out the window.  I wish I looked at the record. Just point me to the record where it says Mr. Tice in the United States was involved in the fraudulent scheme. It – Costa's testimony specifically states that Mr. Tice negotiated on a regular basis, on an annual basis, and I don't have that right in front of me at this moment, but it's in our supplemental, the testimony of Costa in the supplemental excerpts. Right. Well, thank you. Thank you. Thank you, Counsel. Mr. Danoff, you have reserved time. I will be brief on three points. As to the conspiracy theory, you do not have to make a choice between DeVries and Kidron. They are totally reconcilable. DeVries said if there is an ongoing tort, part of which occurred before you joined a conspiracy, you're liable until that tort is completed. Kidron says you are not liable for prior completed torts. You are not liable after the fact for things that have already been completed. Those two cases are totally reconcilable, and that's how the district court interpreted them. Number two, on the RICO claim, Tice was a Kesko guy. He did go do some things for Summit, but there was nothing in the record that Tice had committed mail fraud or wire fraud for Summit during the year Summit was held jointly liable with Kesko, which is 2008 on. And, in fact, the district court made no finding there was any wire fraud or any mail fraud. And then, finally, on the space protection, again, the reliance was on Tice's testimony. Tice was testifying for his work for Kesko. And what these contracts were between Seamaster and Summit and MOL were volume contracts, whereas Seamaster and Summit committed to a certain volume each year, MOL committed to providing that volume each year, that space. There was no extra space protection to be charged for that, and the vast majority of the shipments fell within that. There were only one year for Seamaster where there were more shipments that could have been space protected. The district court made no findings as to what that value was. It certainly wasn't a million and a half dollars that they overpaid. Thank you, Your Honor. Thank you, counsel. The case just argued will be submitted for decision, and the court will adjourn.
judges: O'scannlain, Ikuta, Teilborg